12 CIV 7701

JUDGE McMAHON

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Salmen Loksen

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

Columbia University
_____

David  J.  Brenner
John  Doe ,  Lisa  Hogarty
Lucinda  Durning

*(In the space above enter the full name(s) of the defendant(s).*
*If you cannot fit the names of all of the defendants in the space*
*provided, please write "see attached" in the space above and*
*attach an additional sheet of paper with the full list of names.*
*Typically, the company or organization named in your charge*
*to the Equal Employment Opportunity Commission should be*
*named as a defendant.  Addresses should not be included here.)*

RECEIVED
OCT 1 ? 2012
U.S.D.C. S.D. N.Y.
CASHIERS

**COMPLAINT
FOR EMPLOYMENT
DISCRIMINATION**

Jury Trial:  ☒ Yes   ☐ No
*(check one)*

This action is brought for discrimination in employment pursuant to: *(check only those that apply)*

☒     Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e
       to 2000e-17 (race, color, gender, religion, national origin).
       *NOTE:  In order to bring suit in federal district court under Title VII, you must first obtain a*
       *Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

☒     Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§
       621 - 634.
       *NOTE:  In order to bring suit in federal district court under the Age Discrimination in*
       *Employment Act, you must first file a charge with the Equal Employment Opportunity*
       *Commission.*

_____  Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 -
       12117.
       *NOTE: In order to bring suit in federal district court under the Americans with Disabilities Act,*
       *you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity*
       *Commission.*

☒     New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297  (age,
       race, creed, color, national origin, sexual orientation, military status, sex,
       disability, predisposing genetic chacteristics, marital status).

☒     New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to
       131 (actual or perceived age, race, creed, color, national origin, gender,
       disability, marital status, partnership status, sexual orientation, alienage,
       citizenship status).

*Rev. 05/2010*

## I.     Parties in this complaint:

A.     List your name, address and telephone number.  Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff       Name _____ Salmen Loksen _____

                Street Address _____ 580 Crown Street, Apt. #515 _____

                County, City _____ Brooklyn _____

                State & Zip Code _____ NY, 11213 _____

                Telephone Number ____ 347-407-3946 _____

B.     List all defendants' names and the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets of paper as necessary.

Defendant     Name _____ Columbia University (Office of General Counsel) _____

                Street Address _____ 535 West 116th Street _____

                County, City _____ New York _____

                State & Zip Code _____ NY 10027 _____

                Telephone Number ____ 212-845-5669 _____

C.     The address at which I sought employment or was employed by the defendant(s) is:

                Employer _____ Columbia University Medical Center _____

                Street Address _____ 650 West 168th Street _____

                County, City _____ New York _____

                State & Zip Code _____ NY 10032 _____

                Telephone Number ____ 212-851-0662 _____

## II.     Statement of Claim:

State as briefly as possible the _facts_ of your case, including relevant dates and events.  Describe how you were discriminated against.  If you are pursuing claims under other federal or state statutes, you should include facts to support those claims.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.  The discriminatory conduct of which I complain in this action includes: *(check only those that apply)*

          _____          Failure to hire me.

          ___X___          Termination of my employment.

          _____          Failure to promote me.

          _____          Failure to accommodate my disability.

          _____          Unequal terms and conditions of my employment.

*Rev. 05/2010*                               2

_____ ☒ _____  Retaliation.

_____ ☒ _____  Other acts *(specify)*: _____.

> **Note:**   *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.*

B.  It is my best recollection that the alleged discriminatory acts occurred on: Starting from 1/7/2010 .

<em>Date(s)</em>

C.  I believe that defendant(s) *(check one)*:

_____ ☒ _____  is still committing these acts against me.

_____  is not still committing these acts against me.

D.  Defendant(s) discriminated against me based on my *(check only those that apply and explain)*:

☐  race  _____      ☐  color  _____

☐  gender/sex  _____      ☒  religion  Jewish _____

☐  national origin  _____

☒  age.   My date of birth is  12/14/1948 _____  *(Give your date of birth only if you are asserting a claim of age discrimination.)*

☐  disability or perceived disability, _____ *(specify)*

E.   The facts of my case are as follow *(attach additional sheets as necessary)*:

In January 2010 the Columbia University Medical Center Radiation Safety Office, where I had been
employed for many years, underwent a reorganization with three accompanying layoffs. This was carried out
in violation Human Rights Laws and Regulatory Agency Regulations, in violation of Columbia University's
own internal Policies and Procedures, and Commitments to Regulatory Agencies. The only employees
adversely and illegally affected and laid off were myself and two others. All of us are clearly identified as
older Orthodox, Chassidic Jews with beards and yarmulkes. The reasons given by Columbia for the layoffs are false
and misleading. My termination and the other terminations was clearly for illicit discriminatory reasons. See attached.

> **Note:**   *As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights or the New York City Commission on Human Rights.*

## III.   Exhaustion of Federal Administrative Remedies:

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding defendant's alleged discriminatory conduct on: _____ October 25, 2010 _____ *(Date)*.

B.    The Equal Employment Opportunity Commission *(check one)*:

⎯⎯⎯⎯  has not issued a Notice of Right to Sue letter.

☒  issued a Notice of Right to Sue letter, which I received on July 20, 2012 ⎯⎯⎯⎯ *(Date)*.

*Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.*

C.    Only litigants alleging age discrimination must answer this Question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

☒  60 days or more have elapsed.

⎯⎯⎯⎯  less than 60 days have elapsed.

## IV.    Relief:

WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs, as follows:

Compensation for loss of wages and for emotional pain and suffering, punitive damages, and attorneys' fees.

Letter of apology and reinstatement to my position.

*(Describe relief sought, including amount of damages, if any, and the basis for such relief.)*

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this ⎯⎯ day of October ⎯⎯⎯⎯, 20 12 .

Signature of Plaintiff

Address          580 Crown Street, Apt. #515

Brooklyn, NY 11213

Telephone Number     347-407-3946

Fax Number *(if you have one)* ⎯⎯⎯⎯⎯⎯⎯⎯

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Salmen Loksen**
    **612 Empire Boulevard**
    **Brooklyn, NY 11213**

From:  **New York District Office**
    **33 Whitehall Street**
    **5th Floor**
    **New York, NY 10004**

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 846-2010-66481 | **Orfelino Genao,**<br>**Investigator** | **(212) 336-3642** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [X] | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

_Kevin J. Berry,_
**Kevin J. Berry,**
**District Director**

7-18-12
(Date Mailed)

cc:  **COLUMBIA UNIVERSITY**
    **535 West 116th Street**
    **New York, NY 10027**

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Salmen Loksen<br>612 Empire Boulevard<br>Brooklyn, NY 11213 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2011-02855 | **Orfelino Genao,**<br>Investigator | (212) 336-3642 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

Kevin J. Berry, /s/     7-18-12
**Kevin J. Berry,**
**District Director**          *(Date Mailed)*

cc:     COLUMBIA UNIVERSITY
        535 W. 116th Street
        New York, NY 10027



**U.S. Equal Employment Opportunity Commission**
**New York District Office**

33 Whitehall Street
5th Floor
New York, NY 10004
(212) 336-3620
TDD: 1-800-669-6820
Fax: (212) 336-3625
1-800-669-4000

Respondent: COLUMBIA UNIVERSITY
EEOC Charge No.: 520-2011-02855
FEPA Charge No.:

August 12, 2011

Salmen Loksen
612 Empire Boulevard
Brooklyn, NY 11213

Dear Mr. Loksen:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

[ X ] Title VII of the Civil Rights Act of 1964 (Title VII)
[ ] The Age Discrimination in Employment Act (ADEA)
[ ] The Americans with Disabilities Act (ADA)
[ ] The Equal Pay Act (EPA)
[ ] The Genetic Information Nondiscrimination Act (GINA)

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

[X]    Please be aware that we will send a copy of the charge to the agency listed below as required by our procedures. If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.

New York City Commission On Human Rights
Queens Community Service
153-01 Jamaica Avenue
Jamaica, NY 11432

While your charge is pending, please notify us of any change in your address, or where you can be reached if you have any prolonged absence from home. Your cooperation in this matter is essential.

Sincerely,

Corrado Gigante
Deputy Director
(212) 336-3665

Office Hours: Monday – Friday, 8:30 a.m. - 5:00 p.m.
www.eeoc.gov

Enclosure(s)

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 520-2011-02855 |

| New York City Commission On Human Rights | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| **Mr. Salmen Loksen** | **(718) 467-5232** | **12-14-1948** |

| Street Address | City, State and ZIP Code |
|---|---|
| **612 Empire Boulevard, Brooklyn, NY 11213** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **COLUMBIA UNIVERSITY** | **Unknown** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **650 West 168th Street, New York, NY 10032** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest — Latest: **05-20-2011**
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**SEE ATTACHED CHARGE PARTICULARS**

RECEIVED
JUL 28 2011
EEOC-NYDO-CHTU

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

July 26, 2011
Date — Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE July 26 2011
(month, day, year)

**NANCY HOOK**
Notary Public, State of New York
Sullivan County Clerk's No. 4859958
Commission Expires May 27, 20__

**EEOC Charge**
**Salmen Loksen v. Columbia University**

Charge Statement

My name is Salmen Loksen and I am a 61-year old Orthodox Hassidic Jew. I believe Columbia University (hereinafter referred to as "Respondent") retaliated against me for filing a previous complaint of discrimination.

On November 30, 2010, I filed a charge of religion, national origin and age discrimination with the EEOC (Charge No. 846-2010-66481). In retaliation for my complaint, Respondent is refusing to provide me with benefits that I am entitled to as a former long-term employee. As a former Officer of Respondent, one continuing benefit I am supposed to receive is tuition assistance for my dependent children. When I asked Respondent why they weren't honoring their commitment, I received contradicting answers. The latest reason Respondent has given me is that it made two payments in 2004 to a university in Israel. However, I have no documentation that a duplicate payment was made, and even if it was, I am not responsible for Respondent's error in submitting a duplicate payment. In addition, I have asked Respondent to give me complete Summary Plan Descriptions ("SPDs") for all tuition benefits, but Respondent has refused to comply with my request. Respondent is withholding other benefits from me as well.

I believe Respondent is retaliating against me because I filed a charge with the EEOC.

I affirm that the above statement is true to the best of my knowledge, information and belief.

_____                    July 26, 2011
Salmen Loksen                                       Date

Subscribed and sworn to before me on this date:   July 26, 2011
(month, day, year)

_____

**NANCY HOOK**
Notary Public, State of New York
Sullivan County Clerk's No. 4859968
Commission Expires May 27, 20....



**U.S. Equal Employment Opportunity Commission
New York District Office**

33 Whitehall Street
5th Floor
New York, NY 10004
(212) 336-3620
TDD: 1-800-669-6820
Fax: (212) 336-3626
1-800-669-4000

Respondent: COLUMBIA UNIVERSITY
EEOC Charge No.: 520-2011-02855
FEPA Charge No.:

August 12, 2011

Salmen Loksen
612 Empire Boulevard
Brooklyn, NY 11213

Dear Mr. Loksen:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

[ X ]  Title VII of the Civil Rights Act of 1964 (Title VII)
[ ]  The Age Discrimination in Employment Act (ADEA)
[ ]  The Americans with Disabilities Act (ADA)
[ ]  The Equal Pay Act (EPA)
[ ]  The Genetic Information Nondiscrimination Act (GINA)

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

[X]        Please be aware that we will send a copy of the charge to the agency listed below as required by our procedures. If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.

New York City Commission On Human Rights
Queens Community Service
153-01 Jamaica Avenue
Jamaica, NY 11432

While your charge is pending, please notify us of any change in your address, or where you can be reached if you have any prolonged absence from home. Your cooperation in this matter is essential.

Sincerely,

Corrado Gigante
Deputy Director
(212) 336-3665

Office Hours: Monday – Friday, 8:30 a.m. - 5:00 p.m.
www.eeoc.gov

Enclosure(s)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### INTAKE QUESTIONNAIRE

Please immediately complete this entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER**, a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination. When we receive this form, we will review it to determine EEOC coverage. Answer all questions completely, and attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A." (PLEASE PRINT)

**1. Personal Information**

Last Name: LOKSEN       First Name: SALMEN       MI: _____

Street or Mailing Address: 612 EMPIRE BOULEVARD       Apt or Unit #: _____

City: NEW YORK     County: BROOKLYN     State: NY     Zip: 11213

Phone Numbers: Home: (718) 467-5232     Work: (___)_____

Cell: (347) 407-3946     Email Address: SL528G@GMAIL.COM

Date of Birth: 12/14/1948     Sex: ☒ Male ☐ Female     Do You Have a Disability? ☐ Yes ☒ No

**Please answer each of the next three questions.**  i. Are you Hispanic or Latino? ☐ Yes ☒ No

ii. What is your Race?  Please choose all that apply. ☐ American Indian or Alaskan Native   ☐ Asian   ☒ White
☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)?   JEWISH

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: MORDECHAI   LOKSEN       Relationship: SON

Address: _____     City: _____     State: _____ Zip Code: _____

Home Phone: (___) _____     Other Phone: (718) 687-6016

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☒ Employer   ☐ Union   ☐ Employment Agency   ☐ Other (Please Specify) _____

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) **If more than one employer is involved, attach additional sheets.**

Organization Name:  COLUMBIA UNIVERSITY - 535 west 116th street

Address: 650 WEST 168TH STREET     County: MANHATTAN

City: NEW YORK     State: NY Zip: 10032     Phone: (212) 854-9970

Type of Business: Medical/Academic   Job Location if different from Org. Address: 722 west 168th St

Human Resources Director or Owner Name: Cindy Durning     Phone: (212) 851-7264

Number of Employees in the Organization at All Locations: Please Check (✓) One

☐ Fewer Than 15   ☐ 15 – 100   ☐ 101 – 200   ☐ 201 – 500   ☒ More than 500

**3. Your Employment Data** (Complete as many items as you are able.) Are you a federal employee? ☐ Yes ☐ No

Date Hired: DECEMBER 1996     Job Title At Hire: DIRECTOR, RADIATION SAFETY OFFICE & RSO

Pay Rate When Hired: _____     Last or Current Pay Rate: $195,000.00/YEAR

Job Title at Time of Alleged Discrimination: DIRECTOR & RSO   Date Quit/Discharged: FEBRUARY 2010

Name and Title of Immediate Supervisor:  DR. ROBERT KASS

If Job Applicant, Date You Applied for Job _____     Job Title Applied For _____

1

**4. What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race ☐ Sex ☒Age ☐ Disability ☒ National Origin ☒ Religion ☒ Retaliation ☐ Pregnancy ☐ Color (typically a difference in skin shade within the same race) ☐ Genetic Information; circle which type(s) of genetic information is involved: i. genetic testing   ii. family medical history   iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify My claim of employment discrimination is based on my religion, national origin, and age. i am an Orthodox Chassidic Jew, easily identified as such by my wearing of a Yarmulka and my beard, and my taking vacation time off on Jewish religious holidays, and I am over 60 years old.
If you checked genetic information, how did the employer obtain the genetic information? _____

See   attached   Supplement.

Other reason (basis) for discrimination (Explain): retaliation   for   opposing   discrimination

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. Please attach additional pages if needed.
*(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

A. Date: __January 7, 2010__ Action: __Informed that my position would be eliminated.__

See   attached   Supplement

Name and Title of Person(s) Responsible: __Lisa Hogarty, Chief Operating Officer__

B. Date: __January 7, 2010__ Action: __Informed me that my position would be eliminated.__

See   attached   Supplement.

Name and Title of Person(s) Responsible _____

**6. Why do you believe these actions were discriminatory?** Please attach additional pages if needed.
see attached supplement.

**7. What reason(s) were given to you for the acts you consider discriminatory?** By whom? His or Her Job Title?
see attached supplement.

**8. Describe who was in the same or similar situation as you and how they were treated.** For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. see attached supplement. | | | |
| B. | | | |

2

**Of the persons in the same or similar situation as you, who was treated *worse* than you?**

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. | | | |
| B. | | | |

**Of the persons in the same or similar situation as you, who was treated the *same* as you?**

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. Bruce Emmer | Age, National Origin, Religion | Health Physicist | Terminated |
| Please see attached supplement | | | |
| B. Moshe Friedman | Age, National Origin, Religion | Office Administrator | Terminated |
| Please see attached supplement. | | | |

**Answer questions 9-12 only if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.**

**9. Please check all that apply:**
- ☐ Yes, I have a disability
- ☐ I do not have a disability now but I did have one
- ☐ No disability but the organization treats me as if I am disabled

**10. What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything?** (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

**11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?**
☐ Yes ☐ No
If "Yes," what medication, medical equipment or other assistance do you use?

**12. Did you ask your employer for any changes or assistance to do your job because of your disability?**
☐ Yes ☐ No

If "Yes," when did you ask? _____ How did you ask (verbally or in writing)? _____

Who did you ask? (Provide full name and job title of person)

Describe the changes or assistance that you asked for: _____

How did your employer respond to your request? _____

3

13.  Are there any witnesses to the alleged discriminatory incidents?  If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)

| Full Name | Job Title | Address & Phone Number | What do you believe this person will tell us? |
|-----------|-----------|------------------------|-----------------------------------------------|

A.    Please see attached supplement.

B.

14.  Have you filed a charge previously on this matter with the EEOC or another agency?  ☒ Yes  ☐ No

15.  If you filed a complaint with another agency, provide the name of agency and the date of filing: _____

OSHA

16.  Have you sought help about this situation from a union, an attorney, or any other source?  ☐ Yes  ☐ No
Provide name of organization, name of person you spoke with and date of contact. Results, if any?

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.  If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws.  If you do not file a charge of discrimination within the time limits, you will lose your rights.  If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1.  If you want to file a charge, you should check Box 2.

BOX 1  ☐ I want to talk to an EEOC employee before deciding whether to file a charge.  I understand that by checking this box, I have not filed a charge with the EEOC.  I also understand that I could lose my rights if I do not file a charge in time.

BOX 2  ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.  I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_____               October 22, 2010
          Signature                                      Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1) FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08). 2) AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a)
3) PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters.
5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

November 2009

**US EEOC Complaint Form – Information provided by Salmen Loksen  –  10/22/2010**

Employer:              Columbia University
Terminated:            Salmen Loksen – Director & Radiation Safety Officer – 61 years old

Also Terminated:       Moshe Friedman – Office Administrator – 57 years old
                       Bruce Emmer – Physicist – 65 years old

### 4. What is the reason (basis) for your claim of employment discrimination?

My claim of employment discrimination is based on my religion, national origin, and age. I am an Orthodox Chassidic Jew, easily identified as such by my wearing of a Yarmulka and my beard, and my taking vacation time off on Jewish religious holidays, and I am over 60 years old.

### 5. What happened to you that you believe was discriminatory?

**Overview:**

On Thursday, January 7, 2010, without prior notice, Salmen Loksen, CHP, DABR, was laid off from his position as Director and Radiation Safety Officer of the Radiation Safety Office of Columbia University Medical Center (CUMC)/New York Presbyterian Hospital-Columbia Center (NYPH)/New York State Psychiatric Institute (NYSPI). Also laid off in this action was Moshe Friedman, Office Administrator.

On Sunday, January 10, 2010, Bruce Emmer, DABR, DABMP, for many years employed as a Physicist for one day/ten hrs. per week in the Radiation Safety Office, arrived for work but was not allowed to enter the CUMC premises, and his ID badge was confiscated. In the next few weeks he was not allowed to return to work, and on February 18, 2010 he received by FedEx a notice of his termination.

The remaining fourteen (14) regular employees in the Radiation Safety Office were not selected for layoff. Four (4) casual employees were also not affected by the layoff action. All three employees affected by the layoff, Salmen Loksen, Moshe Friedman, and Bruce Emmer, are **practicing Orthodox Jews, with _yarmulkas_ and beards**, ranging in age from 57 to 65.

Details Initial Layoff Actions:

On Wednesday, January 6, 2010 an email was received from an assistant of Lisa Hogarty, COO of Columbia University Medical Center, inviting Salmen Loksen and Moshe Friedman, who were CC'ed together, to a meeting next day at 11:30 a.m., to discuss "Update of Radiation Safety Office." No alternative dates or times would be available. Salmen Loksen and Moshe Friedman responded that they would attend the meeting.

1

The meeting was in dean's office, Physicians & Surgeons Building, room 2-401. Mr. Loksen and Mr. Friedman were 5 minutes early and were asked to wait in waiting area. Lisa Hogarty appeared and Salmen Loksen wished her a happy new year. She said Moshe Friedman should wait and she would talk with Salmen Loksen first.

Lisa Hogarty escorted Salmen Loksen to a conference room in the dean's suite. Present was Sony Jean-Michel from Human Resources. Lisa Hogarty sat down and looked at some papers and said that the University had decided to reorganize. Radiation Safety would now be under David Hirsch and Kathleen A. Crowley, and it was decided Salmen Loksen's position no longer necessary and would be eliminated effective February 1, 2010. Sony Jean-Michel would stay with Salmen Loksen to explain, and she left the room. Sony briefly reviewed the terms of the separation that was being offered, explained COBRA and other options to cope with the job elimination.

To summarize, in the January 7, 2010 reorganization:

1. The CUMC/NYPH/NYSPI Radiation Safety Office was placed under Columbia University's Office of Environmental Health & Safety.
2. The Radiation Safety Officer position, held by Salmen Loksen, CHP, DABR, at CUMC/NYPH/NYSPI was eliminated.
3. The position of Director of the CUMC/NYPH/NYSPI Radiation Safety Office, also held by Salmen Loksen, was eliminated.
4. The position of Office Administrator of the CUMC/NYPH/NYSPI Radiation Safety Office, held by Moshe Friedman, was eliminated.
5. The position of a part-time Board Certified and NYS Licensed Physicist at the CUMC/NYPH/NYSPI Radiation Safety Office was eliminated. Bruce Emmer, DABR, DABMP, the part-time Physicist for many years, was suspended and barred from entrance to the office, immediately at the start of the reorganization, and in February 2010 receive notice of his termination and that his position was eliminated.
6. All three of these initially terminated employees are observant Jews, with yarmulkas and beards, ranging in age from 57 to 65.
7. In addition to the above, Dr. Kass, Columbia University's Management Representative to the Radiation Safety Committee and Administrator, designated by the Dean, Dr. Lee Goldman, for oversight of the Radiation Safety Office, was removed from this oversight function.
8. Dr. Hirsh, Executive VP for Research, was placed over the CUMC/NYPH/NYSPI Radiation Safety Office, via the intermediary of Kathleen Crowley, Assoc. VP of EH&S.
9. There was announcement of the creation of a new position, "Executive Director of Radiation Safety," to oversee all activities pertaining to radiation safety across the University, NYPH and NYSPI, uniting all of Columbia's radiation safety activities under one Chief Radiation Safety Officer, and the initiation of a search to fill this position.
10. George Hamawy, already the Radiation Safety Officer for Columbia University's Morningside, Nevis and Lamont campuses, and Barnard College, in addition to his previous responsibilities, was selected to also serve as interim Radiation Safety Officer for all of CUMC, NYPH and NYSPI as well.

2

11. George Hamawy is not as qualified to be the Radiation Safety Officer at the Medical Center. He has much less credentials than Salmen Loksen, the laid off Radiation Safety Officer, and extremely minimal experience with the human use of radiation, since at Columbia's Morningside and associated campuses radiation use is strictly restricted to non-human use.

12. It is unreasonable to expect that any one individual, no matter how qualified, would be able to be an effective and competent Radiation Safety Officer for such a large and diverse conglomerate of campuses.

13. In violation of regulatory requirements all of these substantial changes were implemented without review and vote of approval by the Joint Radiation Safety Committee of CUMC/NYPH/NYSPI, and implemented without submission to NYC DOHMH and receipt of proper License Amendments.

### 6. Why do you believe these actions were discriminatory?

**Religious Discrimination Claims –**

- There are three individuals primarily affected by the "reorganization" – Salmen Loksen, Moshe Friedman, and Bruce Emmer whose CU ID Badge was confiscated. These three individuals are easily identifiable as orthodox Jews with yarmulkas and beards.
- Not just yarmulkas, but beards.
- After the "reorganization" a high level source stated that "a reason for the shakeout is that there are too many yarmulkas in Radiation Safety."
- The employer engaged in intimidation and threats
- Refused to let me utilize my earned sick leave benefits.

**Age Discrimination Claims:**

- Two of the individuals who were affected (Salmen Loksen, 61, and Bruce Emmer, 65) are the oldest two employees in Radiation Safety. Moshe Friedman, at 57, is the oldest administrative/secretarial employee with a gray beard.
- In 2004 because the Director was younger by six years, this was defeated, in 2010, due to his increased age they decided to get rid of him.
- In the OWBPA form from the employer, Bruce Emmer who is listed as 65 was listed as not selected for termination as part of the "reorganization." In fact, Bruce Emmer was terminated as part of the "reorganization." Other employees of the Radiation Safety Office were completely omitted from the list.
- The employer engaged in intimidation and threats.
- Refused to let me utilize my earned sick leave benefits.

3

**Explanation:**

In the January 7, 2010 reorganization the administrative oversight for the Radiation Safety Office was transferred from Dr. Robert Kass, Columbia University's Management Representative to the Radiation Safety Committee and the administrator designated by the Dean for oversight of the Radiation Safety Office, to Dr. David Hirsh, Exec. VP for Research, via Kathleen Crowley, Assoc. VP of Environmental Health & Safety. George Hamawy, the Radiation Safety Officer for the Morningside, Nevis and Lamont campuses, and Barnard College, is meanwhile also serving as interim Radiation Safety Officer for CUMC, NYPH and NYSPI.

**Salmen Loksen – Director & Radiation Safety Officer**

Notably, during the tenure of Salmen Loksen as Director and Radiation Safety Officer, CUMC, NYPH and NYSPI have had a very enviable record of compliance with regulatory requirements, regularly earning comments from Inspectors such as "Grade of A," "a model for the whole city," and in the last inspection in December 2009, "perfect." This is an especially significant achievement considering the large size and scope of the activities at CUMC/NYPH/NYSPI. In these past years, under the directorship of Salmen Loksen, the Radiation Safety Office has cost effectively renegotiated a number of vender services, and held budgetary increases to a minimum. There is a saying, "if it isn't broke, don't fix it," and in this case, it wasn't broke, it was working "perfectly," so why would CU administration intentionally take an axe and break it?

Further, in selecting which employee should stay on as the Radiation Safety Officer of the combined CUMC and Morningside Campus Radiation Safety Office, Mr. Loksen unquestionably has superior credentials to George Hamawy, who was the selectee to remain.

Mr. Loksen is certified by American Board of Radiology in Therapeutic Radiologic Physics and is a certified Health Physicist (CHP). In addition, Mr. Loksen is Licensed by NYS in Medical Health Physics, Medical Nuclear Physics, Diagnostic Radiological Physics, and Therapeutic Radiological Physics. Mr. Loksen, in addition to his being listed as the RSO for all CUMC/NYPH/NYSPI licenses and permits, is also listed as the Therapy Physicist on the Broad Scope Human Use License, Gamma Knife License, and the Linac Certified Registrations. In addition Mr. Loksen is listed as the RSO and Therapy Physicist at the Radiation Oncology facility at East 60th Street.

When comparing the two general campuses, Morningside and the Medical Center, the Medical Center's use of radiation and radioactive materials is much more complex in size and scope of operations, due primarily to the medical and research human use of radiation, none of which is performed at the academic campus. This distinction is so clear, that for development and advice regarding the new Manhattanville project, which will involve human use of radiation in the Morningside Campus area, the developers turned to Mr. Loksen at the CUMC campus, and not to Mr. Hamawy on the Morningside Campus.

4

In addition, as stated above, Mr. Loksen has in his 13 plus years as Director of the CUMC/NYPH/NYSPI Radiation Safety Office an enviable record of ensuring regulatory compliance and receiving continuous allocates from regulatory agencies, including NYS DEC and NYC DOHMH. Mr. Loksen has excellent rapport with all the departments, including with the Medical Physicists at CUMC/NYPH/NYSPI. Mr. Loksen also has a fine continuing relationship with CU's academic Medical Physics program, including providing lectures and practicums to Medical Physics graduate students – for which he never received any additional compensation. It may reasonably be expected that there will be a number of negative side effects to this the hasty reorganization that will negatively impact research, patients, and the surrounding community.

### Moshe Friedman – Office Administrator

The Radiation Safety Office's part-time officer level Administrative Assistant position was expanded into a full-time Office Administrator position, filled by Moshe Friedman, in 2006. The Office Administrator position includes numerous duties which are now not being assigned to anyone.

There is no apparent reason for his layoff except that he was perceived to be too close to Mr. Loksen, primarily due to his religious identification and age. It is virtually certain that if he were of any other religious identity he would not have been laid off.

### Bruce Emmer – Physicist

With regard to Bruce Emmer, there appears to be no reason for his termination other than it being due to religious discrimination. Some relevant details about his situation:

Bruce Emmer was terminated despite the fact that he is a permanent part time employee for many years. Meanwhile other part time employees, who do not have yarmulkas and beards, were not selected for termination. These include Tom Lowinger, a casual physicist who works just three or four hours per week at the Radiation Safety Office, and James Donlan, another casual physicist who works for five days per week. In addition, neither of these other individuals have been employed by the RSO for anywhere near as many years as Bruce Emmer has.

Generally Bruce Emmer reported for work ten hours per week, working all day Sunday. A number of times per year he worked for the Radiation Safety Office on other days of the week, as for instance to give radiation safety training lectures to specialized groups or departments at the Medical Center, or when the x-ray facilities he was responsible for needed service and Sunday was not an option.

Bruce Emmer's regular presence on Sundays at the Radiation Safety Office was considered an advantage in that he was available to provide immediate emergency response to incidents such as radioactive spills, the triggering of radiation alarms, misadministrations, etc., that might occur on that day when otherwise no one else was scheduled to be on campus covering radiation safety responsibilities and emergencies. The value of this previous item was emphasized on Sunday, February 21, 2010 when Bruce Emmer received a call on his private cell phone from the CUMC

5

security office asking him to respond to a radiation safety emergency that had just occurred that day (the security office had evidently not been notified by the present leadership of the Radiation Safety Office that Bruce Emmer had just been terminated).

At this time, with Salmen Loksen, CHP, DABR, laid off, and Tom Juchnewicz, DABR, Assistant Radiation Safety Officer, on extended disability leave, the services Bruce Emmer, DABR, DABMP, a Board Certified Medical Physicist, seemingly are even more important for the continuation of the responsibilities and functions of the Radiation Safety Office. The regulatory agencies have been continuously recommending increasing the amount of professional staffing, even when Salmen Loksen and Tom Juchnewicz, the senior professional staff at the Radiation Safety Office, were employed and available, and how much more is the need for retaining as many of the professional staff now that they are laid off or on disability leave. Other professional positions at the Radiation Safety Office are currently unfilled as well.

### 7. What reason(s) were given to you for the acts you consider discriminatory? By whom? His or Her Job Title?

The reason for the layoff action, as written in the severance letter given Lisa Hogarty, COO, to Salmen Loksen and Moshe Friedman, was stated to be for "restructure and consolidation of business operations and functions to create greater efficiency, budgetary constraints and changes in the scope of the department." (It turns out however, as will be explained, that budgetary constraints played no part in this, and in fact it is virtually certain that the reorganization will lead to much greater expenses, not less.) In other words, it was stated that the Radiation Safety Office was being incorporated into the Office of Environmental Health & Safety (EH&S), which would assume all administrative functions, and consequently there was no longer a need for a Director and Office Administrator for the Radiation Safety Office.

The stated reason for Bruce Emmer's termination, in a FedEx letter to him that he received on Feb. 18, 2010, was that as part of the restructuring it was determined that his position was no longer necessary.

The stated reason for the layoff of Salmen Loksen and Moshe Friedman was due to "budgetary constraints." This explanation is not plausible, especially with the ever increasing number of clinical and research projects involving radiation at the Medical Center. To this extent, at the Institutional Health and Safety Committee Meeting in December, 2009, Dr. Hirsch stated that safety concerns and adherence to regulatory requirements outweighed any money or budgetary concerns in relation to the RSO. Dr. Hirsh elaborated that a reduction in funding could result in regulatory infractions and that the cost of fines for any violations could obliterate any potential budgetary savings. Dr. Hirsh and Columbia University as a whole certainly remember the nearly one million dollar fine, negative publicity, legal costs, etc., suffered by Columbia as a consequence of trying to cut costs at the Morningside Campus Environmental Health and Safety Office in the early 2000's. In recent front page news in the NY Times of January 16, 2010, CUMC found to be in violation of FDA regulations. The resulting elimination of research opportunities and negative publicity is substantially more costly that budgeting for quality control and regulatory assurance personnel.

6

**8. Describe who was in the same or similar situation as you and how they were treated.**

**Of the persons in the same or similar situation as you, who was treated *better* than you?**

It is obvious that the Radiation Safety Officer at the Columbia University Morningside Campus, i.e., George Hamawy – not Jewish, but of Egyptian nationality, younger than Salmen Loksen – was treated better than Salmen Loksen was.

1. In the "decisional unit" for the "reorganization" only employees employed by Radiation Safety in the Medical Center Campus at Columbia University were considered for job elimination. No one from the Radiation Safety Office at Morningside was considered.
2. No one from the Environmental Health and Safety Office at either CUMC or at the Morningside Campus was considered for job elimination.
3. The purported "reorganization" was to combine the EH&S with Radiation Safety at CUMC, but the decisional unit was limited to the staff of the Radiation Safety Office at CUMC.
4. Dr. David Brenner, Chairman of the Radiation Safety Committee. A New York Times front page report, on July 16, 2010, entitled *"Studies Halted at Brain Lab Over Impure Injections,"* by Benedict Carey (excerpted here), broke the news of troubling violations occurring at Columbia University Medical Center:

   .......Columbia University has quietly suspended research at a nationally prominent brain-imaging center and reassigned its top managers after federal investigators found that it had routinely injected mental patients with drugs that contained potentially dangerous impurities.

   The investigations found that the center — regarded by experts as the nation's leader in the use of positron emission tomography, or PET, for psychiatric research — repeatedly violated Food and Drug Administration regulations over a four-year period. F.D.A. investigators returned in January 2010 and found that many of the center's lab's practices had not changed, and cited a long list of specific violations, including one instance in which the staff hid impurities from auditors by falsifying documents. "They raided the place like it was a crime scene, seizing hard drives," said one former lab worker, who requested anonymity because he feared reprisals from the university.......

   David Brenner, did not suffer any consequences because he is not an orthodox Jew wearing a beard and yarmulke.

7

**Of the persons in the same or similar situation as you, who was treated the *same* as you?**

Regarding Moshe Friedman and Bruce Emmer please see above.

**13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say.**

**Full Name; Job Title; Address & Phone No.; What do you believe this person will tell us?**

Dr. Lee Goldman
Dr. Robert Shea
Dr. Robert Kass
Dr. Chang Shi Wuu
Dr. Peter Esser
Dr. Edward Nickaloff
Dr. Edward Christman
Dr. Eric Hall
Dr. Steve Balter
Dr. Robert Kelly – NY Presbyterian
Dr. John Mann – NYS PI
Thomas Juchnewicz
All members of the Joint Radiation Safety Committee (list to be provided)
New York City Department of Health and Mental Hygiene, Office of Radiological Health
New York State Department of Environmental Conservation
US Occupational Health and Safety Administration

All of these people will confirm:

1. Outstanding performance of the CUMC Radiation Safety Office under Salmen Loksen's direction.
2. The process utilized during the "reorganization" and associated layoff action was highly irregular and in violation of regulatory requirements and Columbia University policy.
3. That Salmen Loksen (and Moshe Friedman and Bruce Emmer) are openly religious Chassidic Jews with beards and yarmulkas.

**Supplemental Information and Relevant Background**

All personnel in the Radiation Safety Office are Columbia University employees. The Radiation Safety Office facilities are located at the Columbia University Medical Center, at the Washington Heights campus (168th Street). The Radiation Safety Office administers a number of Licenses, Registrations and Permits, providing radiation safety services for the human use and non-human

8

use of radiation at Columbia University Medical Center, New York Presbyterian Hospital, and New York State Psychiatric Institute, which share interconnected facilities and personnel, and which by agreement share in the oversight of the Radiation Safety Office, through the Joint Radiation Safety Committee of CUMC/NYPH/NYSPI, as well expenses for its personnel salaries and operational costs. The Radiation Safety Office also provides radiation safety services to a number of off campus locations.

Columbia University has another Radiation Safety Office on the Columbia University Morningside campus (116th Street), much smaller in size and scope, with just two employees, and restricted to non-human research use of radiation, with no oversight of medical use of radiation on human patients and research subjects. Many years ago the Morningside campus Environmental Health & Safety Office had assumed control of the Morningside Radiation Safety Office. In a separate action, in 2005, the EH&S office on the Morningside campus was merged with the previously separate EH&S office at the Columbia University Medical Center campus (168th St.), and Kathleen Crowley, who had previously been the Director of EH&S only at CUMC, became Assoc. VP for EH&S on both campuses.

## Reorganization attempt in 2004

There was a previous attempt to do this same type of "Reorganization" in 2004. This was done by Columbia without consideration and vote of the Joint Radiation Safety Committee and a request to do so being submitted to NYC Department of Health as required by regulatory requirements. At that time the NYC Department of Health issued a Violation against Columbia for its unauthorized action, and Dr. Fischbach, head of CUMC (since replaced by Dr. Goldman) send a letter of retraction to the City. A copy of Dr. Fischbach's letter is attached. In the present January 2010 reorganization there again was no consideration and vote of the Joint Radiation Safety Committee and License Amendment request to do this submitted to NYC Department of Health, and the no License Amendment has been issued.

In addition, for many years the Regulatory Agencies, NYC DOH and NYS Department of Environmental Conservation have been regularly sending written recommendations (even warnings) to CUMC about the need to retain adequate staffing levels in the Radiation Safety Office. In this action, with professional medical physics and radiation safety experts Salmen Loksen and Bruce Emmer being laid off, it is almost certain that there will be a gap in the RSO's ability to maintain its responsibilities. In 2005, the expansion of the then part-time officer level Administrative Assistant position into a full-time Office Administrator position, later filled by Moshe Friedman, was also discussed with the regulatory agencies.

In the January 2010 reorganization, it is unclear why anyone should have been laid off. Back in 2004, when CUMC first tried to accomplish a reorganization to unite EH&S and the RSO, it was done without terminating any positions. It seems almost certain that the immediate layoff of three critical employees will have a negative impact on the ability of the RSO to fulfill all its responsibilities and provide the best possible radiation safety services, and almost inevitably will result in problems, especially as there are many expanding responsibilities in recent years and that are foreseen for the future addition of various new projects. Indeed, at the present time there

9

is a pressing need for additional staff, certainly not for less staff, and this has been continuously been recommended by State and City regulatory agencies, and committed to by CUMC management.

In the present restructuring, contrary to regulatory requirements, all of these substantial changes were implemented without the review and vote of approval by the CUMC/NYPH/NYSPI Joint Radiation Safety Committee. Additionally, all of these substantial changes were implemented without submission to NYC DOHMH and receipt of proper License Amendments.

## Racial and religious discrimination investigation of Mr. Loksen and Mr. Friedman, 2009

In 2009 there had been another examination of Radiation Safety Office staffing and hiring practices, conducted by the CU Office of Equal Opportunity and Affirmative Action. This had been prompted by a complaint by a casual employee of Asian extraction that she was not hired for a permanent position in the RSO because of discrimination at the hands of Salmen Loksen, the RSO Director, due to his Orthodox Jewish affiliation, an affiliation shared by Moshe Friedman, Office Administrator, and other RSO staff.

In a report issued at the end of December 2009, it was noted that there was no basis for the complaint. There had no bias in the RSO hiring decisions, and the best candidate was selected regardless of race or religion.

Both Mr. Loksen and Mr. Friedman feel that they are themselves easy targets for discrimination complaints and they are at times discriminated against due to their obvious minority group status. Both wear yarmulkas and have beards. In the present termination of Mr. Loksen and Mr. Friedman, and the suspension and subsequent termination of Bruce Emmer, notably all three are members of one minority ethnic group, easily identified by their yarmulkas and beards.

### Religious discrimination claims

Instances where people made any remarks that indicated hostility toward either religion or age, as well as any other evidence to demonstrate that these were factors in the decision to terminate your employment. Obviously, most people realize that they cannot explicitly make slurs or say explicitly racist/ageist remarks in the office.

However, after the "reorganization" a high level source stated that "a reason for the shakeout is that there are too many *yarmulkas* in Radiation Safety."

- In 2009 there was a complaint – Ivy Chan, a part time casual technician, even though she removed her complaint – there was a very thorough investigation despite the obvious fallacy of the idea because of the presence of Orthodox Jews.

10

## Discussion of "Attachment A"

1. See attached "Attachment A" that was provided with the initial severance agreement offer on January 7, 2010 --- listed below are some issues and problems concerning this document.

2. Deficient in that it did not include Bruce Emmer.

3. Deficient-RSO employee omitted - Dae In Kim.

4. The elimination of Loksen position is fraud because you cannot eliminate the RSO position.

5. Age – in the form they didn't included the EH&S; If based strictly on Reorganization Salmen Loksen has better credentials and better track record in terms of regulatory compliance. The real reason for the termination was not the reorganization but age and religious discrimination.

6. If it was a genuine objective reorganization and not targeting specific individuals to eliminate for age, religion, etc., then EH&S should have been considered.

7. It is apparent that the sham reorganization was used to target individuations for elimination because of their age and religion.

8. In addition the process of layoff does not comply with OWBPA regulations because only SL and MF selected, BE not selected. Subsequently BE received a letter "as part of the reorg." His position is being eliminated.

9. From January to now October 2010 there is no real reorganization. George Hamawy is still the interim RSO, they are recruiting for another RSO with credentials similar to Salmen Loksen.

10. Reorganization could have been done without eliminating positions. The elimination of the positions was not due to the reorganization (to put RSO under EH&S) but a targeted elimination based on age and religious discrimination.

11. Columbia University has history of noncompliance with regulatory requirements, not only NYC DOHMH and USNRC .

12

## ATTACHMENT A

The decisional unit is all employees employed by Radiation Safety in the Medical Center Campus at Columbia University.

All persons employed by Radiation Safety in the Medical Center Campus were eligible for the Columbia severance program. The following factors were used in selecting persons for termination as part of the January 2010 severance program: Restructure and consolidation of business operations and functions to create greater efficiency, budgetary constraints and changes in the scope of the department.

The following is a listing of the job titles and ages of persons employed by Radiation Safety in the Medical Center Campus who were and were not selected for termination and the offer of consideration for signing a release:

| Job Title | Age[1] | Selected (X = selected) |
|---|---|---|
| Assistant Physicist | 24 | |
| Assistant Physicist | 28 | |
| Clerk B | 25 | |
| Health Physicist | 65 | |
| Office Administrator | 57 | X |
| Asst. Radiation Safety Officer | 60 | |
| Assistant Physicist | 29 | |
| Technician B | 44 | |
| Director of Radiation Safety | 61 | X |
| Radiation Protection Supervisor | 55 | |
| Technician B | 26 | |
| Chief Technician | 60 | |
| Administrative Aide | 32 | |
| Technician B | 30 | |
| Senior Clerk | 25 | |
| Technician B | 49 | |

---

[1] For purposes of this chart, the individuals' ages were calculated as of **January 6, 2010**.

13